UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE TEPHAROL CLARK,

           Petitioner,           Case Number 13-13616
v.                                              Honorable David M. Lawson

CINDI CURTIN,

           Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Maurice Tepharol Clark, a prisoner in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus challenging his conviction of and sentences for various firearms charges after a jury trial in the Wayne County, Michigan circuit court. He argues that a dispute with his court-appointed attorney over the decision to call a certain witness deprived him of his right to counsel and the right to present a defense. He also contends that he did not receive constitutionally adequate representation, and the state court committed a sentencing error. He raised each of his claims on direct appeal, and they were rejected. The warden responded with an answer to the petition asserting that the claims lack merit. Because the state courts' decisions did not contravene or unreasonably apply federal constitutional law as determined by the Supreme Court, the petition will be denied.

I.

Petitioner Clark was arrested in the early morning hours of May 7, 2010 along with Rannie Lee Hinson by two police officers in the City of Detroit. Officer Lamar Coody testified that Clark and Hanson were walking in the middle of the street, in violation of a municipal ordinance. The officers ordered them to stop. "Hinson immediately complied with one of the officer's commands

to step toward the police vehicle. Before Clark complied, however, he walked up the driveway of a nearby residence, appeared to remove a firearm from his person and place it in front of a vehicle that was parked in the driveway." *People v. Clark*, No. 301317, 2012 WL 882418, at *1 (Mich. Ct. App. Mar. 15, 2012). After Clark and Hanson were arrested, Coody's partner, officer Rhonda Sherman, recovered a black semi-automatic handgun with a white handle.

Clark was charged with several crimes relating to his possession of the handgun: carrying a concealed weapon, Mich. Comp Laws § 750.227; felon in possession of a firearm, Mich. Comp Laws § 750.224f; possession of a firearm in the commission of a felony (felony firearm), third offense, Mich. Comp Laws § 750.227b; and possession of a weapon with a defaced serial number, Mich. Comp Laws § 750.230. He was also designated a fourth felony habitual offender. An attorney was appointed to represent him, and the case proceeded to trial on August 12, 2010. The jury was unable to reach a verdict, and the court declared a mistrial, with the petitioner's consent.

The court scheduled the petitioner's retrial for September 30, 2010. For reasons not clear from the record, a new lawyer was appointed to represent the petitioner several days before a scheduled court conference on September 24, 2010. On that date, the petitioner voiced concern about the late substitution, told the trial judge that he disagreed with his new lawyer about whether to call as a witness an examiner who checked the firearm for fingerprints, and expressed a lack of confidence in his new lawyer. He asked for a different lawyer to be appointed. The court refused that request, and the case proceeded to trial.

The petitioner was convicted of carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm in the commission of a felony (felony firearm), third offense. The defaced serial number charge had been dismissed by the judge at the first trial. The court

sentenced the defendant to concurrent two-year prison terms for carrying a concealed weapon and being a felon in possession of a firearm. However, because the petitioner had two prior convictions of felony firearm, state law mandated a ten-year consecutive prison term for that offense, which the trial judge imposed.

The petitioner filed a direct appeal, raising the same issues presented in the habeas petition he filed in this Court. The Michigan Court of Appeals rejected his arguments and affirmed his convictions and sentences. *People v. Clark*, 2012 WL 882418, at *3. The state supreme court denied leave to appeal. *People v. Clark*, 492 Mich. 866, 819 N.W. 2d 576 (2012).

The petitioner seeks a writ of habeas corpus on the following grounds:

I.  The trial court violated Maurice Clark's due process rights by denying his request for appointment of substitute counsel where a conflict arose over fundamental trial tactics and counsel's lack of pretrial preparation. US Cont Am XIV; 1963 Const Art 1 § 17.

II. The trial court deprived Clark of his constitutional right to present a defense by precluding the testimony of police expert witnesses in the area of latent prints. US Cont Am XIV; 1963 Const Art 1 § 17.

III. Clark was denied the effective assistance of counsel guaranteed him by the federal and state constitutions at trial. Therefore he is entitled to a new trial.

IV. Due process requires resentencing where Clark's felony firearm (third) enhancement is invalid because Clark's prior 1999 felony firearm convictions were consolidated through plea negotiations and treated as first convictions with two-year maximum sentences. Therefore, these prior convictions should be counted as one prior conviction for felony firearm enhancement purposes.

Pet. at 5-14. The warden answered the petition, arguing that the state courts ruled correctly in rejecting these claims.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Clark filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and

demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner framed his first argument as a violation of his rights under the Fourteenth Amendment's Due Process Clause, contending that the trial court failed to appreciate the disagreement he had with his lawyer over trial tactics, and his loss of confidence in his attorney. The better way to look at this claim, however, is as an alleged Sixth Amendment violation.

The petitioner was represented at his first trial by Christopher Kessel. That trial ended in a hung jury, and a mistrial was declared. The petitioner's retrial was scheduled for September 30, 2010. Several days before the retrial was scheduled to commence, the petitioner received a new court-appointed attorney, Kristen Pell. It appears that Mr. Kessel and Ms. Pell both were assistant

public defenders who worked together for the Legal Aid and Defender Association. Why the substitution took place, however, remains unclear.

What is certain, though, is that at a final pretrial conference that took place about a week before the retrial, the petitioner requested another appointed lawyer because he was dissatisfied with Ms. Pell. He complained that Pell had decided to stipulate to the admission of the Michigan State Police fingerprint specialist's report, which stated that no fingerprints were found on the gun that the police recovered from the crime scene. The petitioner preferred that the witness appear to testify. The following exchange with the trial judge occurred at that proceeding:

> Your Honor, first of all I just met this lady — Ms. Pell last Friday. Everything that I have asked her to do she has referred to the old attorney that I had, Mr. Kessler [sic], from the last trial. It's like, I asked her to call a witness on my behalf. The same thing I asked Mr. Kessel to do, and it's like, they won't do it.

Hrg. Tr. at 4 (Sept. 24, 2010). The judge denied the petitioner's request for new counsel, finding that the examiner's report would serve the same function as the expert's trial testimony.

The petitioner then voiced another concern:

> How am I suppose (sic) trust this lady with my life in thirteen days, when she come over and see me with no paperwork?

*Id.* at 5-6. The judge stated that the case involved only two witnesses and that his court reporter was preparing the transcripts from the first trial in an expeditious manner so that the petitioner's new attorney would have them before the retrial. The judge again denied the motion for substitute counsel.

On direct appeal, the Michigan Court of Appeals rejected the petitioner's argument that the trial court should have appointed another attorney for him, reasoning:

> In support of his request for substitute counsel, Clark advised the trial court that he wanted to call a fingerprint technician to testify at trial that there were no fingerprints

> found on the gun, but his attorney refused. The fingerprint analysis report, however, was to be admitted at trial[,] which demonstrated that there were no fingerprints on the firearm. Defense counsel's decision regarding what evidence to admit to support that there were no fingerprints on the gun is a matter of trial strategy and does not constitute good cause for substitute counsel.
>
> Clark also informed the trial court that defense counsel was not adequately prepared for trial as counsel was not assigned to the case until 13 days before trial. Defense counsel also was not scheduled to receive transcripts of the testimony of two police officers from Clark's first trial until two days before the retrial. The length of time between defense counsel being assigned and the receipt of transcripts and the start of trial alone, absent a showing of prejudice, does not establish inadequate preparation. We find that Clark's assertions represent mere allegations of lack of confidence in counsel, which do not warrant substitute counsel. Thus, the trial court did not abuse its discretion when it denied Clark's request for substitute counsel.

*People v. Clark*, 2012 WL 882418, at *1 (footnotes omitted).

That decision properly applies Sixth Amendment jurisprudence. In arriving at that conclusion, one must consider two separate questions presented by the petitioner's first claim. The first is whether he was entitled to a new lawyer because of a disagreement with his assigned lawyer over a matter of trial strategy. The second is whether his loss of confidence in his lawyer that stemmed from his concern for lack of preparation mandates a new lawyer. Both questions implicate the Sixth Amendment.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)). "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, "[t]he right to the assistance of

counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney." *Ibid.*; *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

The concept of adequate representation necessarily includes the obligation of the attorney to assist the defendant in defending against the state's charges. That obligation encompasses the duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The Supreme Court has not held, however, that counsel must obtain a defendant's agreement on "every tactical decision" in a case. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). There are certain decisions, of course, that "cannot be made for the defendant by a surrogate," such as "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Ibid.* (citations omitted). The Supreme Court has not held, however, that the decision to accept a stipulation on a circumstantial fact in lieu of calling a witness is so basic that counsel could not proceed over the objection of his client.

Attorney Pell's election to prove the absence of fingerprints on the firearm by stipulation was reasonable. She was able to establish that fact without the witness testifying, and thereby avoid the opportunity for the prosecution to dilute that evidence with testimony explaining why a fingerprint might not be present even when an individual has handled an object. The petitioner complains that

Pell squandered the chance to ask the police examiner about DNA evidence. But there is nothing in the record even suggesting that the witness was qualified to comment on that form of forensic investigation.

The trial court's refusal to appoint a new attorney because of the petitioner's disagreement over that tactical decision, and the appellate court's treatment of that issue, did not contravene or unreasonably apply Supreme Court precedent.

The second issue raised by the petitioner's objection to proceeding with attorney Pell addressed what he perceived as a lack of trial preparation, and a corresponding loss of confidence. No Supreme Court decision suggests that a criminal defendant is entitled to a new lawyer simply because the defendant loses confidence in his appointed attorney. On the contrary, the Court has held that the Sixth Amendment does not guarantee a criminal defendant "a meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("[R]eject[ing] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel"). What the Sixth Amendment *does* guarantee is adequate representation. To show that he was denied that right, the petitioner must satisfy the two factor test outlined in *Strickland v. Washington*, 466 U.S. at 687, which, as discussed below, he has not satisfied here.

The Supreme Court has recognized that there are times when assigned counsel should be replaced. In *Martel v. Clair*, --- U.S. ---, 132 S. Ct. 1276 (2012), the Court discussed motions by habeas petitioners to substitute counsel in capital cases. But that discussion focuses on statutory interpretation, not the Sixth Amendment. The Court applied an "interest of justice" standard, interpreting 18 U.S.C. § 3599(e). *Id.* at 1284. When reviewing the denial of a motion to substitute a habeas petitioner's attorney, the Court suggested that courts consider "the timeliness of the motion;

the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Id.* at 1287. But that review must be highly deferential, "[b]ecause a trial court's decision on substitution is so fact-specific." *Ibid.*

Although *Martel* is not a decision that bears directly on state courts — because it interpreted a federal statute that governs only federal district courts, not the Sixth Amendment — the Michigan Court of Appeals did not unreasonably apply its underlying principles when affirming the denial of the petitioner's request for a new attorney. Instead, it noted that the trial court inquired into the nature of the dispute, found no substantial breakdown of the attorney-client relationship, and found that not substituting counsel could not be criticized without a showing of prejudice. Counsel may have been pressed for time to review the transcripts of the testimony of the state's two witnesses from the first trial. But "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris*, 461 U.S. at 11. Instead, as noted above, the petitioner must show prejudice. *Id.* at 11-12 (asserting that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel") (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

The petitioner has not shown that Ms. Pell was unprepared at his second trial. He cannot show prejudice resulting from counsel's failure to investigate if he does not make some showing of the evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002). Nor can he prevail without

-10-

demonstrating how additional pretrial work by counsel would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002).

The state courts reasonably determined that no continuance and no new counsel were required in order the afford the petitioner an adequate defense. Those decisions were faithful to Sixth Amendment jurisprudence.

B.

The petitioner next contends that he was denied his constitutional right to present a defense when the trial judge prevented the Michigan State Police fingerprint technician from testifying on his behalf. The Michigan Court of Appeals rejected that claim, writing:

> Review of the record reveals that the trial court did not preclude Clark from calling the fingerprint technician as a witness at trial. Rather, during the hearing on Clark's motion for substitute counsel, the trial court found that defense counsel's decision not to call such a witness was not a basis for the appointment of new counsel as the evidence to be elicited from the technician was contained in the fingerprint analysis report. As such, Clark's argument must fail.
>
> Additionally, Clark contends that by allegedly precluding the fingerprint technician from testifying he was "denied the opportunity to cross-examine the People's expert witnesses and to inquire into why the People did not follow through with the DNA evidence." It is purely speculative that the fingerprint technician would have been qualified to testify regarding DNA evidence. Therefore, Clark's argument lacks merit.

*People v. Clark*, 2012 WL 882418, at *2 (internal footnotes omitted).

The Sixth Amendment provides an accused the right to "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, a crucial part of the Constitution's more basic guarantee of "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As applied to the states by the Due Process Clause of the Fourteenth Amendment, the accused has the right at trial to present testimony that is "relevant," "material," and

"vital to the defense." *Washington v. Texas*, 388 U.S. 14, 16 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (stating that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (citations omitted)). However, the "right to present relevant evidence is not unlimited" and "is subject to reasonable restrictions" imposed by the criminal process. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (holding that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' Moreover, [the Court] ha[s] found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused") (citations omitted).

The trial judge did not prevent the petitioner from calling the fingerprint technician. Instead, the petitioner's trial counsel chose to stipulate to the admission of the fingerprint technician's report, which indicated that no fingerprints had been recovered from the gun. That report was admitted in evidence. Defense counsel argued in her opening and closing statements that no fingerprints had been recovered from the weapon, the petitioner was not wearing gloves, and he did not have time to wipe the gun down.

By the time of the final pretrial conference, counsel already had decided to offer the technician's report instead of calling him as a witness. The trial judge responded to the petitioner's disagreement with that tactic with language that could be construed as refusing the petitioner the opportunity to call the witness. However, even if one reads those comments in that way, there was

no denial of the right to present a defense when the substance of the technician's testimony was admitted through a stipulation. *See, e.g.*, *United States v. Overton*, 600 F. App'x 303, 306-07 (6th Cir. 2014). And as noted earlier, the lost opportunity to confront the technician with questions about testing the firearm for DNA traces is a red herring: there is no suggestion in the record that the technician was versed in that kind of forensic testing. Because the stipulated admission of the technician's report served the same purpose as his live testimony, the state courts reasonably concluded that the petitioner's right to present a defense was not violated.

C.

The petitioner contends he was deprived of the effective assistance of trial counsel, because his attorney did not call as a witness Rannie Hinson, the person who was arrested with the petitioner that evening; trial counsel did not call the fingerprint technician, instead relying on a stipulation to prove the circumstantial fact; and counsel did not present a police car video to show that he did not discard the handgun recovered from the crime scene. It is well established that to succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. To establish prejudice from counsel's failure to investigate or call a potential witness, a petitioner must show that had the witness testified, "the result of the proceeding would have been different." *Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).

On habeas review, the petitioner's burden is even greater. The Supreme Court explained in *Harrington v. Richter* that

> [s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid*. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid*. (citing *Alvarado*, 541 U.S. at 664).

The petitioner first alleges that trial counsel was ineffective by failing to call Rannie Hinson to testify. The petitioner attached to his petition an affidavit from Mr. Hinson, dated March 23, 2011, in which Hinson averred that he "did not see Mr. Clark with a gun" and he "did not see Mr. Clark throw a gun."

Had Hinson testified consistently with that averment at trial, his evidence conceivably could have been helpful to the petitioner. However, it is not clear that Hinson would have given that testimony at the September 2010 trial, or that trial counsel failed to interview him. Moreover, the testimony would not have exonerated the petitioner. Officer Coody testified that when he asked the petitioner and Hinson to step over to his vehicle, Hinson complied immediately but the petitioner walked up into a driveway of a residence, where Officer Coody observed the petitioner pull a gun from his pocket, and walk over to and place the gun in front of a vehicle. Because Hinson already had walked up to the officer, he may have been out of the line of sight and unable to observe the petitioner's movements. Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004) (quotation omitted). There is no indication from the affidavit that Mr. Hinson actually observed the petitioner walk up the driveway or was otherwise observing him at the time that Officer Coody witnessed the petitioner discard the gun. Because Hinson's testimony would not necessarily have been exculpatory, trial counsel was not ineffective by failing to call him to testify.

Moreover, defense counsel presented evidence and testimony in support of the petitioner's defense that he did not possess the gun. In addition to presenting evidence that the petitioner's fingerprints were not found on the handgun, defense counsel also elicited testimony from Officer Coody's partner Officer Rhonda Sherman that she did not see the petitioner discard a weapon, even though she was closer to him than Officer Coody.

Hinson's proposed testimony would have been cumulative of Officer Sherman's testimony and the fingerprint technician's report that the petitioner's fingerprints had not been recovered from the gun. Potential impeachment evidence is considered cumulative "when the witness has already

-15-

been sufficiently impeached at trial." *Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009) (quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)). Because Officer Coody's testimony about witnessing the petitioner discard a gun had already been impeached, the petitioner was not prejudiced by counsel's failure to impeach Officer Coody with cumulative impeachment evidence.

The petitioner also argues that defense counsel was ineffective by failing to call the Michigan State Police fingerprint technician to testify about the lack of fingerprints recovered from the handgun. As previously mentioned, the fingerprint technician's report was entered in evidence by stipulation. Defense counsel mentioned the lack of fingerprints in her opening and closing statements. She covered the point of that potential testimony and made a reasonable tactical decision to proceed the way she did. The state courts did not find cause to second-guess her decision, and nor does this Court. "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" more than five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 562 U.S. at 107.

The petitioner lastly argues that trial counsel was ineffective by not presenting a video from the police car to show that he did not discard the handgun recovered from the crime scene. The Michigan Court of Appeals rejected the petitioner's claim because the petitioner "provided no evidence that the video in fact exists." *People v. Clark*, 2012 WL 882418, at *3.n That decision properly applied federal law. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g.*, *Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006) (holding that bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (likewise holding that conclusory allegations of ineffective assistance

-16-

of appellate counsel do not warrant habeas relief). There is no evidence that the police car in question contained a video camera. Because this portion of the petitioner's ineffective assistance of counsel claim is unsupported, he is not entitled to habeas relief.

D.

Last, the petitioner argues that he was improperly sentenced for his conviction of felony firearm, third offense, because he was only considered a first-time offender in a prior plea deal in which he pleaded guilty to two different felony firearm charges arising out of different incidents. This issue calls into question the state courts' interpretation of the multiple offender provisions of the Michigan felony-firearm statute. That statute punishes a person "who . . . has in his . . . possession a firearm when he . . . commits . . . a felony." Mich. Comp Laws § 750.227b(1). A mandatory two-year prison sentence is prescribed. However, "[u]pon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years." *Ibid.*

The petitioner does not dispute that he had been convicted of felony firearm twice before his trial in this case. But he argued that the two convictions should be counted as one because the two separate incidents leading to the convictions were consolidated for sentencing on the same day. The Michigan Court of Appeals rejected that argument, noting that the Michigan Supreme Court had held that a third offender sentence under this statute is appropriate when "'both prior felony-firearm convictions have arisen from separate criminal incidents.'" *People v. Clark*, 2012 WL 882418, at *3 (quoting *People v. Stewart*, 441 Mich. 89, 95, 490 N.W. 2d 327, 330 (1992)).

For a federal habeas court, that is the end of the matter. State courts are the final arbiters of state law. *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002). The petitioner is not entitled to habeas relief on his claim that his sentence was

improperly enhanced under Michigan's felony firearm statute for a third offense, because it involves an application of state law. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Therefore, claims involving the application of a state's habitual offender or sentencing enhancement laws are non-cognizable on habeas review. *Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008).

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 21, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 21, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI